# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KONG MENG XIONG,<br><br>        Plaintiff,<br><br>   v.<br><br>CITY OF MERCED, et al.,<br><br>        Defendants.<br>_____ | Case No. 1:13-cv-00083-SKO<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO CONSOLIDATE**<br><br>(Doc. No. 25) |
| Related Action:<br><br>LUH XIONG,<br><br>        Plaintiff,<br><br>   v.<br><br>CITY OF MERCED, et al.,<br><br>       Defendants.<br>_____/ | Case No. 1:13-cv-00111-SKO<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO CONSOLIDATE**<br><br>(Doc. No. 22) |

### I.   INTRODUCTION

This action, *Kong Xiong v. City of Merced, et al.* ("*Kong Xiong*"), 1:13-cv-00083-SKO, was filed on January 17, 2013. (*Kong Xiong*, 1:13-cv-00083, Doc. 1.) The case was deemed

related to a second civil action filed on January 23, 2013, captioned *Luh Xiong v. City of Merced, et al.*("*Luh Xiong*"), 1:13-cv-00111-SKO. Although the two actions involve different plaintiffs who are represented by separate counsel, each complaint states claims against the same three defendants: (1) City of Merced; (2) Officer James Lodwick ("Lodwick"); and (3) Officer Eduardo Chavez ("Chavez") (collectively "Defendants"). Both complaints arise out of Officers Lodwick and Chavez' discharge of their weapons on December 3, 2011, at a residence at or near 1594 Buckingham Court in Merced, California, which injured both Plaintiffs Kong Xiong and Luh Xiong[1] (collectively, "Plaintiffs").

At an initial scheduling conference of both cases held on August 8, 2013, Defendants indicated they intended to file a motion to consolidate the *Kong Xiong* and *Luh Xiong* actions. The Court set a briefing schedule, requiring that any motion to consolidate be filed no later than September 6, 2013, any opposition to the motion be filed no later than September 20, 2013, and any reply be filed no later than September 26, 2013. (Doc. 20.) A hearing on the motion was set for October 2, 2013. (Id.)

On September 6, 2013, Defendants filed a motion to consolidate the two cases, and no opposition was filed by Plaintiffs. After having considered the motion and the supporting documentation, the Court finds the motion suitable for a decision without argument, and the hearing set for October 2, 2013, is VACATED pursuant to U.S. District Court for the Eastern District of California's Local Rule 230(g). For the reasons set forth below, Defendants' motion is GRANTED.

## II. BACKGROUND

**A.   Summary of the Complaints**

   **1.   *Kong Xiong v. City of Merced, et al.*, Case No. 1:13-cv-00083-SKO**

Plaintiff Kong Xiong alleges that he attended a house party located at 1594 Buckingham Court in Merced, California. The Merced Police Department received a call that a man at the house party had a gun. (*Kong Xiong*, 1:13-cv-00083-SKO, Doc. 1, ¶ 28.) Shortly after the call was placed, Officers Chavez and Lodwick arrived at an area near the house, and walked down the

---

[1] Kong Xiong and Luh Xiong are unrelated individuals. (*Luh Xiong*, 1:13-cv-00111-SKO, Doc. 2, ¶ 20.)

2

side of the house toward a window. (*Kong Xiong*, 1:13-cv-00083-SKO, Doc. 1, ¶¶ 30-32.) As the Officers were approaching the side of the house, they heard a semi-automatic pistol being readied to fire. (*Kong Xiong*, 1:13-cv-00083-SKO, Doc. 1, ¶ 34.) The Officers then walked along the side of the house, toward the rear window, and Kong Xiong came out of the house. (*Kong Xiong*, 1:13-cv-00083-SKO, Doc. 1, ¶ 35.) The Officers turned up their gun-mounted flashlights and yelled, "get your hands up." (*Kong Xiong*, 1:13-cv-00083-SKO, Doc. 1, ¶ 37.) Immediately after turning on the flashlights, Kong Xiong turned his back to the Officers and began to run away towards the back of the property. (*Kong Xiong*, 1:13-cv-00083-SKO, Doc. 1, ¶ 40.) Within "a second or less" of yelling at Kong Xiong to get his hands up, and after he turned and ran about 6 to 8 feet from the Officers, the Officers fired multiple rounds at and into Kong Xiong, who immediately fell to the ground in pain. (*Kong Xiong*, 1:13-cv-00083-SKO, Doc. 1, ¶¶ 42, 45.) Individuals within the house and in the backyard of the house informed the Officers that there was a victim of their shooting in the backyard and another victim in the house. (*Kong Xiong*, 1:13-cv-00083-SKO, Doc. 1, ¶ 46.) Although the Officers knew there were two injured civilians and possibly a third, neither made an attempt for 10 minutes or more to render any assistance to any of the injured individuals. (*Kong Xiong*, 1:13-cv-00083-SKO, Doc. 1, ¶ 46.)

Within "moments" of the shooting, Sergeant Court, Officers Chavez and Lodwick's direct supervisor, arrived on the scene. (*Kong Xiong*, 1:13-cv-00083-SKO, Doc. 1, ¶ 47.) The Officers and Sergeant Court "took the position" that they could not render assistance to those individuals who had been shot until after the house had been cleared of all people. (*Kong Xiong*, 1:13-cv-00083-SKO, Doc. 1, ¶ 49.) Officers located a handgun near Kong Xiong, but left the gun lying near him, using the proximity of the gun as another excuse not to move Kong Xiong. (*Kong Xiong*, 1:13-cv-00083-SKO, Doc. 1, ¶ 52.) However, within 10 minutes, Sergeant Court and Officers Chavez and Lodgwick, along with other officers, moved Kong Xiong to a location where paramedics could begin to assist him. (*Kong Xiong*, 1:13-cv-00083-SKO, Doc. 1, ¶ 50.) Another individual who was shot in the backyard was not removed to a location where he could receive medical assistance for several more minutes and by the time he was taken to the paramedics, he was no longer breathing. (*Kong Xiong*, 1:13-cv-00083-SKO, Doc. 1, ¶ 51.)

Kong Xiong filed his complaint on January 17, 2013. He alleges claims for violation of the California Civil Code §§ 51.71 and 52.1, battery, assault, negligence, excessive force in violation of the Fourth Amendment, conspiracy pursuant to 42 U.S.C. § 1985, a *Monell* claim pursuant to Section 1983 (*see Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978)), and a claim for injunctive relief.

### 2. *Luh Xiong v. City of Merced, et al.*, Case No. 1:13-cv-00111-SKO

Luh Xiong alleges that he was in attendance at a party on December 3, 2011, at a residence located at 1594 Buckingham Court in Merced, California. (*Luh Xiong*, 1:13-cv-00111-SKO, Doc. 2, ¶¶ 1, 18.) Luh Xiong asserts that Officers Chavez and Lodwick responded to the residence to investigate reports that a person had a firearm at the party. (*Luh Xiong*, 1:13-cv-00111-SKO, Doc. 2, ¶ 18.) When the Officers approached the residence, purportedly recorded on a video camera contained in Officer Chavez' eyeglasses, they saw several people, readily identifiable as teenagers, standing in front of the residence. (*Luh Xiong*, 1:13-cv-00111-SKO, Doc. 2, ¶ 19.) As the Officers approached, they had their guns drawn, heard the sounds of a verbal argument, and shined their flashlights on Kong Xiong. (*Luh Xiong*, 1:13-cv-00111-SKO, Doc. 2, ¶ 20.) The Officers yelled for Kong Xiong to "get his hands up," the Officers' presence startled Kong Xiong, and he turned and ran away from the Officers. (*Luh Xiong*, 1:13-cv-00111-SKO, Doc. 2, ¶ 20.) The Officers then fired several bullets in the direction of the house. (*Luh Xiong*, 1:13-cv-00111-SKO, Doc. 2, ¶ 21.) The bullets "ripped through" the house's wooden fence, and struck Luh Xiong in his right thigh. (*Luh Xiong*, 1:13-cv-00111-SKO, Doc. 2, ¶ 21.) In total, three people were struck with bullets. (*Luh Xiong*, 1:13-cv-00111-SKO, Doc. 2, ¶ 21.) After he was shot, Luh Xiong ran into the house, collapsed, and lost consciousness. (*Luh Xiong*, 1:13-cv-00111-SKO, Doc. 2, ¶ 22.) He was awakened by the pain of being bitten on his arm by a Merced Police canine. (*Luh Xiong*, 1:13-cv-00111-SKO, Doc. 2, ¶ 22.) He was later transported to Mercy Hospital where he was treated for his gunshot wound and dog-bite injuries. (*Luh Xiong*, 1:13-cv-00111-SKO, Doc. 2, ¶ 22.)

Luh Xiong filed a complaint against Officers Chavez and Lodwick as well as the City of Merced on January 23, 2013. Luh Xiong alleges claims against Officers Chavez and Lodwick

under Section 1983 for unreasonable search and seizure and excessive force in violation of the Fourth Amendment (*Luh Xiong*, 1:13-cv-00111-SKO, Doc. 2, ¶¶ 24-25), violation of Plaintiff's due process rights under the Fourteenth Amendment (*Luh Xiong*, 1:13-cv-00111-SKO, Doc. 2, ¶¶ 24-25), and state-law claims for assault, battery, and negligence (*Luh Xiong*, 1:13-cv-00111-SKO, Doc. 2, ¶¶ 40-46). Against the City of Merced, Luh Xiong alleges two Section 1983 claims, including a *Monell* claim. (*Luh Xiong*, 1:13-cv-00111-SKO, Doc. 2, ¶¶ 26-39.)

**B.     Procedural Background**

On July 2, 2013, the parties in *Luh Xiong v. City of Merced, et al.,* 1:13-cv-00111-SKO, appeared for a scheduling conference before U.S. Magistrate Judge Boone. Defendants indicated they would file a notice that the *Luh Xiong* case was related to the *Kong Xiong* case; as a result, the scheduling conference was continued to July 23, 2013. On July 3, 2013, U.S. District Judge O'Neill issued an order relating *Kong Xiong v. City of Merced, et al.*, 1:13-cv-00083-SKO with *Luh Xiong v. City of Merced, et al.,*, 1:13-cv-00111-SKO, and both actions were assigned to District Judge O'Neill and U.S. Magistrate Judge Sheila K. Oberto. (Doc. 13.)[2]

A joint scheduling conference in both cases was held on August 8, 2013, before the undersigned. Defendants indicated they intended to file a motion to consolidate *Kong Xiong* and *Luh Xiong* actions, and the Court ordered that any motion for consolidation be filed no later than September 6, 2013, any opposition be filed no later than September 20, 2013, and any reply be filed no later than September 26, 2013. The Court also ordered the parties to serve initial disclosures by no later than September 13, 2013. No other scheduling deadlines were set, and the Court noted that a further scheduling conference would be set once the Court ruled on Defendants' motion to consolidate. (Doc. 20.)

On September 6, 2013, Defendants filed a motion to consolidate the *Kong Xiong* and the *Luh Xiong* actions. The motion was filed in both cases, and neither Plaintiff filed an opposition.

### III.     DISCUSSION

Federal Rule of Civil Procedure 42(a) provides that "[i]f actions before the court involve a common question of law or fact," the court may consolidate the actions. District courts have

---

[2] The parties in both cases have consented to the jurisdiction of the U.S. Magistrate Judge.

broad discretion to grant or deny consolidation. *Pierce v. Cnty. of Orange*, 526 F.3d 1190, 1203 (9th Cir. 2008); *see also In re Adams Apples, Inc.*, 829 F.2d 1484, 1487 (9th Cir. 1987). In considering whether to consolidate cases, the court "weighs the interest of judicial convenience against the potential for delay, confusion and prejudice caused by consolidation." *S.W. Marine Inc. v. Triple A Mach. Shop*, 720 F. Supp. 805, 807 (N.D. Cal. 1989).

**A.     Common Issues of Law and Fact**

The threshold requirement for consolidation is the presence of a common question of fact or law. *Yousefi v. Lockheed Martin Corp.*, 70 F. Supp. 2d 1061, 1064-65 (C.D. Cal. 1999). Defendants assert that both cases arise out of Officers Chavez and Lodwick's discharge of their firearms on the evening of December 3, 2011, which resulted in injury to both Plaintiffs. Specifically, Kong Xiong alleges that one of the Officer's bullets struck his leg, and Luh Xiong alleges that a bullet struck him in the right thigh. Defendants contend that several of Plaintiffs' claims thus share common issues of law and fact such that consolidation of the two actions is appropriate, and the interests of the parties as well as the interest of judicial economy favor consolidation.

**1.     Plaintiffs' Claims for Excessive Force Share Common Issues of Fact and Law**

The claims of each Plaintiff share several common issues of fact and law. Specifically, each Plaintiff alleges a Section 1983 claim under the Fourth Amendment, asserting that the Officers used excessive force in discharging their weapons on the evening of December 3, 2011. Defendants contend that the main use of force at issue is the Officers' discharge of their firearms at Kong Xiong, and the same facts will determine whether this force was reasonable as to both Plaintiffs under the reasonableness test set forth in *Graham v. Connor*, 490 U.S. 386, 395 (1989).

Under *Graham*, to determine whether the force used by a police officer was objectively reasonable, the nature and quality of the intrusion on the individual's Fourth Amendment interests are balanced against the countervailing governmental interests at stake. Thus, each Plaintiff's Fourth Amendment claim hinges on the reasonableness of the conduct of the Officers in discharging their weapons that resulted in gunshot injuries to both Plaintiffs. The factual and legal basis for making that determination is the same with regard to both claims. As Defendants

6

indicate, the governmental interest at stake is the same with respect to both Plaintiffs in that the severity of the crime involves Kong Xiong possibly brandishing a firearm at partygoers earlier in the evening, the Officers' hearing a gun slide rack moments before the incident, Kong Xiong's possession of a firearm, his reaction to police commands, and whether he turned toward officers to point his firearm at them. These facts are common to both claims, and the same legal analysis is applicable.

Further, as Defendants note, the Officers' defense of qualified immunity in each case turns on shared issues of common facts and law. The application of qualified immunity requires consideration of (1) whether an officer's conduct violated a constitutional right; and (2) if so, whether the right was clearly established in light of the specific context of the case. *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Robinson v. York*, 566 F.3d 817, 821 (9th Cir. 2009). Whether the Officers' conduct violated Plaintiffs' constitutional rights overlaps with Plaintiffs' excessive force claims, and, as discussed above, will necessarily involve the same factual and legal analysis. As to the second prong, the specific circumstances confronted by the Officers involve the same facts with respect to both Plaintiffs, particularly because the Officers' use of force did not differ between Plaintiffs. Thus, Defendants' defenses will share common issues of law and fact in relation to Plaintiffs' excessive force claims.

In sum, the Court finds that Plaintiffs' excessive force claims, as well as Defendants' defense of qualified immunity, share overlapping issues of fact and law.

**2. Plaintiffs' *Monell* Claims Share Common Issues of Fact and Law**

Both Plaintiffs assert a Section 1983 claim against the City of Merced pursuant to *Monell* for the failure to adequately train and supervise police officers in the use of deadly force. Although a city may not be held vicariously liable for the unconstitutional acts of its employees on the basis of an employer-employee relationship with the tortfeasor, it may be held liable under *Monell* when a municipal policy or custom causes an employee to violate another's constitutional right. *Monell*, 436 U.S. at 691-92.

The Ninth Circuit has held that municipal liability under *Monell* may be established in one of three ways: (1) "the plaintiff may prove that a city employee committed the alleged

7

constitutional violation pursuant to a formal governmental policy or a longstanding practice or custom which constitutes the standard operating procedure of the local governmental entity;" (2) "the plaintiff may establish that the individual who committed the constitutional tort was an official with final policy-making authority and that the challenged action itself thus constituted an act of official governmental policy;" or (3) "the plaintiff may prove that an official with final policy-making authority ratified a subordinate's unconstitutional decision or action and the basis for it." *Gillette v. Delmore*, 979 F.2d 1342, 1346-47 (9th Cir. 1992). A city may only be held liable under Section 1983 where its policy or custom is the "moving force behind the constitutional violation." *City of Canton v. Harris*, 489 U.S. 378, 389 (1989).

Defendants assert that whether a constitutional violation occurred as a result of the Officers' discharge of their weapons will encompass the same facts and applicable law. Specifically, the issues that will arise in determining *Monell* liability include the sufficiency of the Merced Police Department's use of force policy; whether both Plaintiffs can demonstrate the occurrence of a sufficient number of similar violations so as to infer a pattern or practice; the adequacy of the departments' training in use of force in light of the situations its officers commonly face; and the Department's process in hiring and supervising Officers Chavez and Lodwick. (Doc. 25-1, 7:6-16.)

Although both litigations are in an early stage, the Court agrees that, based upon the allegations of the two complaints, common issues of fact and law appear to predominate in both Plaintiffs' *Monell* claims, including those issues identified by Defendants.

### 3. Plaintiffs' State-Law Claims for Assault, Battery, and Negligence Share Common Issues of Fact and Law

Each Plaintiff alleges California state-law claims for assault, battery, and negligence. Defendants maintain that the reasonableness of the force used by the Officers underpins these claims. Therefore, the same factual and legal issues that govern the Officers' use of force under the Fourth Amendment will also govern Plaintiffs' claims for assault, battery, and negligence. (Doc. 25-1, 7:19-8:4.)

In a claim for assault and battery by a peace officer, under California law, a plaintiff must

prove that unreasonable force was used. Judicial Council of California, Civil Jury Instruction 1305; *see also Edson v. City of Anaheim*, 63 Cal. App. 4th 1269, 1272 (1998). Unreasonable force is conduct that is objectively unreasonable based on the facts and circumstances confronting the peace officer. *Brown v. Ransweiler*, 171 Cal. App. 4th 516, 527 (2009). As such, Plaintiffs' claims for assault and battery flow from the same facts as Plaintiffs' Fourth Amendment excessive force claims and the applicable law is analogous. Because the conduct of the Officers and the reasonableness of their actions with respect to discharging their weapons will be central to Plaintiffs' assault and battery claims, those claims share common issues of fact and law in the same manner as Plaintiffs' excessive force claims discussed above.

Similarly, under California law, negligence is measured by the same standard as battery and excessive use of force under the Fourth Amendment. *Morales v. City of Delano*, 852 F. Supp. 2d 1253, 1278 (E.D. Cal. 2012) (citing *Abston v. City of Merced*, No. 1:09-cv-00511-OWW-DLB, 2011 WL 2118517, at * 16 (E.D. Cal. May 24, 2011)). As discussed, the Officers' conduct and the reasonableness of their actions arise from the same set of facts with regard to both Plaintiffs and will be analyzed under the same legal standard. Thus, Plaintiffs' negligence claims share common issues of fact and law.

**4.     Conclusion**

Both Plaintiffs' claims for excessive force pursuant to Section 1983 arise out of the same use of force by the same Defendant Officers. As such, common issues of fact and law will predominate across both Plaintiffs' excessive force claims. Further, because the legal standard for excessive force overlaps with the standard for state-law claims for assault, battery, and negligence, all of the claims will share the same factual and legal predicate, i.e., the reasonableness of the Officers' discharge of their weapons. Finally, both Plaintiffs' *Monell* claims will require Plaintiffs to establish that the Officers' conduct was unreasonable and therefore unconstitutional. As such, each Plaintiff's claim for excessive force, *Monell* liability pursuant to Section 1983, and state-law claims for assault, battery, and negligence share common issues of fact and law. The threshold requirement for consolidation, therefore, is met. The Court next balances the interests of efficiency and fairness against the risks of prejudice and delay.

**B.     Considerations of Efficiency and Fairness**

In determining whether consolidation is warranted, courts "weigh the interests of judicial convenience against the potential for delay, confusion and prejudice." *S.W. Marine, Inc.*, 720 F. Supp. at 807. Considerations of convenience and economy must yield to a paramount concern for a fair and impartial trial. *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284 (2d Cir. 1990). The factors weighed include the risk of (1) prejudice and confusion; (2) inconsistent adjudications of common factual and legal issues; (3) burden on the parties, witnesses, and available judicial resources; and (4) delay and expense. *Id.*

### 1.     There is Risk of Inconsistent Judgments Absent Consolidation

The Court agrees with Defendants that there is a risk of inconsistent judgments if the cases proceed with dispositive motions or trials in an uncoordinated manner. If one case proceeds to dispositive motion or trial more quickly, this may lead to inconsistent results that are not justified by the overlapping facts and applicable law involved in the cases. Additonally, because Plaintiffs are represented by different counsel, they may pursue different strategies that may result in different outcomes. To alleviate the risk of inconsistent judgments or any collateral estoppel effect of a dispositive decision in either case, consolidation of the cases is appropriate.

### 2.     There is No Risk of Delay

Both actions were filed in January 2013, and they are in the same procedural posture, i.e., Defendants have answered the complaint filed in each case, the Court has set a deadline for the parties to make initial disclosures, and no other discovery has yet been opened. Thus, consolidation will not cause delay in either case. *See Antoninetti v. Chipotle Mexican Grill, Inc.*, Nos. 05-cv-1660-J (WMc), 06-cv-2671-J (WMc), 2007 WL 2669531, at *2 (S.D. Cal. Sept. 7, 2007) ("Federal courts have declined to consolidate cases involving common questions of law or fact where the cases were at different stages of preparedness for trial and where consolidation would delay the case ready of disposition." (quoting *Servants of the Paraclete, Inc. v. Great Am. Ins. Co.*, 886 F. Supp. 1560, 1572 (D.N.M. 1994))).

### 3. Risk of Prejudice or Confusion

Defendants contend that consolidation will not result in jury confusion or prejudice to any party; rather, consolidation will prevent prejudice to all parties in the form of potentially inconsistent rulings or the application of res judicata or collateral estoppel. Plaintiffs have not asserted that they will be prejudiced by consolidated litigation and trial. Although Plaintiff Kong Xiong states claims under the Unruh Act that are not alleged by Plaintiff Luh Xiong, at this stage it does not appear that there will be a substantial risk of jury confusion with respect to Kong Xiong's additional claims. Further, as it pertains to the claims of each Plaintiff, any risk of confusion can be ameliorated by properly structuring the presentation of trial evidence and instructing the jury. *See Dusky v. Bellasaire Invs.*, No. SACV 07-393-DOC, 2007 WL 4403985, at * 5 (C.D. Cal. 2007) (potential for jury confusion in consolidated matters can be alleviated by "properly structuring argument and instructing the jury"). Additionally, if a risk of unfairness or prejudice becomes apparent during the course of discovery on a more complete record, either party may seek to bifurcate issues that are not common to each case or request separate trials. Fed. R. Civ. P. 42(b).

### 4. Potential Burden on Parties, Witnesses, and Judicial Resources

Defendants contend that the same documentary evidence applies to both actions, and the same witnesses have knowledge of the events. Defendants maintain that consolidating the actions for all purposes, including trial, will significantly reduce the burden on the parties and the witnesses, while promoting judicial efficiency and economy. Neither Plaintiff takes issue with Defendants' assertions.

The Court finds that coordinated pretrial proceedings will allow the parties to propound and respond to fewer discovery requests and conduct fewer depositions, and permit the parties to coordinate their motions to eliminate unnecessary and duplicative arguments. This should preserve the parties' resources and result in less expense to both sides. For purposes of trial consolidation, based upon the allegations in the two complaints, it appears there will be significant overlap in terms of the evidence and witnesses. As Plaintiffs have not asserted how they will be prejudiced by a consolidated trial, trial consolidation is appropriate.

**C.     Conclusion**

Defendants have met their burden of establishing that both cases involve common questions of law and fact, and consolidation is appropriate. Moreover, consolidation does not pose a significant risk of delay, jury confusion, or prejudice to either party. As such, Defendants' motion to consolidate is GRANTED. Upon consolidation, the higher numbered case (*Luh Xiong*, 1:13-cv-00111-SKO) will be closed and consolidated with the lower numbered case (*Kong Xiong*, 1:13-cv-00083-SKO).

**D.     A Further Scheduling Conference is Set for October 17, 2013, at 10:00 a.m.**

A scheduling conference is set in these consolidated cases for October 17, 2013, at 10:00 a.m. in Courtroom 7. Telephonic appearances are approved and encouraged. The parties shall prepare and file a joint scheduling report that encompasses both actions on or before October 10, 2013. In their report, beyond the other required content, the parties shall address the logistical issue of filing any motions for summary judgment. As some of Plaintiffs' claims differ and Plaintiffs have separate counsel, Plaintiffs will be permitted to file separately or to oppose separately, any motion for summary judgment and Defendants will be permitted to file jointly against both Plaintiffs or oppose jointly against both Plaintiffs any motion for summary judgment.

The Court anticipates that if Plaintiffs' theories of the cases diverge, Defendants will be required to address Plaintiffs' motions or oppositions in separate sections of their brief. If this logistical procedure is implemented, the parties would be required to coordinate the timing of their motions and/or oppositions. Moreover, the parties would be required to meet and confer to create one joint statement of undisputed facts as a precursor to any summary judgment motion filed. The Court will entertain alternative suggestions of the parties and their counsel at the scheduling conference regarding the mechanics of filing any dispositive motions, and thus this issue should be addressed in the parties' joint scheduling report.

### IV.     CONCLUSION AND ORDER

Accordingly, IT IS HEREBY ORDERED that:

1.     Defendants' motion to consolidate is GRANTED;

2.     The Clerk of Court is DIRECTED to consolidate these cases, closing case number

1:13-cv-00111-SKO:

3. All further filings with respect to either case shall be made in Case Number 1:13-cv-00083-SKO; and

4. A scheduling conference is set for October 17, 2013, at 10:00 a.m. in Courtroom 7.


IT IS SO ORDERED.

Dated:  **October 1, 2013**                              **/s/ Sheila K. Oberto**
                                                        UNITED STATES MAGISTRATE JUDGE